UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


LINDA SINGLETARY                              CIVIL ACTION

v.                                            NO. 14-2648

THE PRUDENTIAL INSURANCE COMPANY              SECTION "F"
OF AMERICA, ET AL.

<u>ORDER AND REASONS</u>

Before the Court are four motions: (1) The Prudential Insurance Company of America's motion to dismiss Count III of the plaintiff's complaint; (2) The United Parcel Service Flexible Benefits Plan and United Parcel Service, Inc.'s motion to dismiss Counts I (as to UPS only), II, and III of the plaintiff's complaint; (3) The Prudential Insurance Company of America's motion to dismiss Count IV of the plaintiff's amended complaint; and (4) The United Parcel Service Flexible Benefits Plan and United Parcel Service, Inc.'s motion to dismiss Counts III and IV of the plaintiff's amended complaint.  For the reasons that follow, the motions are GRANTED.

**Background**

This lawsuit arises out of a widow's efforts to recover life insurance benefits following her husband's tragic death at age 37 in a weekend motorcycle accident; benefits that were denied because of her late husband's active military status.

1

Linda Singletary worked for United Parcel Service, Inc. as a part-time, non-union employee.  As a UPS employee, Mrs. Singletary participated in the UPS Service Flexible Benefits Plan, which provides group insurance coverage to certain qualified UPS employees and their dependents.  The Plan, which includes benefits for both basic dependent life insurance benefits and optional, supplemental dependent life benefits,[1] is an employee welfare benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*.  The Prudential Insurance Company of America provides the life insurance benefit and is the plan administrator with respect to the life insurance benefit at issue.[2]

Timothy Singletary died in October 2012.  Mr. Singletary was a member of the United States Army, but he was stationed stateside and was off-duty at the time of his death.[3]  After her husband's death, Mrs. Singletary submitted a claim to Prudential for life

---

[1] Under the Plan, as a dependent of Linda Singletary, Timothy Singletary was allegedly covered in the amount of $2,000 for basic dependent life benefits and $500,000 for optional dependent life benefits.

[2] In connection with the Plan, Prudential issued to UPS a group life insurance policy, Group Policy Number G-76536-GA, which insured, among other things, dependent life insurance benefits.

[3] On October 21, 2012, Mr. Singletary was operating a 2003 Honda motorcycle on State Highway 195 in Killeen, Texas when he was involved in a collision with another vehicle.  After Mr. Singletary was thrown from his motorcycle and came to rest in a traffic lane, another vehicle drove over him and he became lodged underneath the vehicle until it stopped.  Mr. Singletary was transported to a nearby hospital, where he was pronounced dead.

insurance benefits under the Plan.  On December 4, 2012, Prudential denied her claim on the grounds that Mr. Singletary was not a qualified dependent because he was on "active duty" in the armed forces at the time of his death.[4]  Mrs. Singletary twice appealed Prudential's adverse benefits determination on the grounds that (a) Mr. Singletary was a qualified dependent at the time of his death because he was off duty; and (b) it is illegal discrimination to deny benefits to a serviceman.  Prudential twice denied Mrs. Singletary's appeals.

Having exhausted her administrative remedies under the terms of the Plan and ERISA, Mrs. Singletary sued The Prudential Insurance Company of America, the United Parcel Service Flexible Benefits Plan, and United Parcel Service, Inc.  Mrs. Singletary seeks to recover damages related to the denial of basic and optional dependent life insurance benefits under the benefit plan sponsored by her employer, UPS, and she advances four theories of recovery.[5]  First, Mrs. Singletary seeks to recover from Prudential dependent group life insurance benefits; a claim governed by ERISA

---

[4] The group policy exclusion provides, in part:

    (2)  Your spouse, Domestic partner or child is
         not your Qualified Dependent while:
         (a)  on active duty in the armed forces
              of any country.

[5] Mrs. Singletary alleges that each of the three named defendants are liable jointly, severally, and *in solido*.

3

(Count I).[6]  Second, Mrs. Singletary alleges that UPS (only) has violated the Uniformed Services Employment and Reemployment Rights Act of 1994 by denying her equal access and coverage for life insurance benefits under the terms of the Plan solely because her husband was on active duty status in the armed forces at the time of his death (Count II).  Third, Mrs. Singletary seeks to recover, under the Louisiana Military Service Relief Act, La.R.S. 29:402, an award of all basic and optional dependent life insurance benefits under the Plan, plus an amount equal to that award as liquidated damages and attorney's fees.  Fourth, Mrs. Singletary seeks a declaration under La.R.S. 22:943(A) that the Plan's referenced exclusion (based solely on an otherwise qualified dependent's status as a member of the armed forces) is illegal; she also seeks an award of all group life insurance benefits.[7]

Prudential now seeks to dismiss Counts III and IV of the plaintiff's original and amended complaints.  And the Plan, along with UPS, now seek to dismiss Counts II, III, and IV of the

---

[6] Prudential has answered Count I.

[7] Alternatively, Mrs. Singletary urges the Court to reform the Prudential group policy to remove any coverage exclusion or restriction premised solely on a person's status as an active duty member of the armed forces (without regard to any causal connection between the insured's death and war).

Mrs. Singletary added this fourth count when she amended her complaint; in the amended complaint, she also revised her third claim to invoke the Louisiana statutory provision governing group life insurance policies, rather than individual life insurance policies.

4

original and amended complaints; UPS also seeks to dismiss Count I insofar as it is named as a defendant to the plaintiff's ERISA claim.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  <u>See</u> <u>Lowrey v. Tex. A & M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997) (quoting <u>Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.</u>, 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009)(citing Fed.R.Civ.P. 8).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Id.</u> at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  <u>See</u> <u>Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit</u>, 369 F.3d 464 (5th Cir. 2004) (quoting <u>Jones v. Greninger</u>, 188 F.3d 322, 324 (5th Cir. 1999)).  But, in

deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. <u>Kaiser</u>, 677 F.2d at 1050.   Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009). A corollary: legal conclusions "must be supported by factual allegations." <u>Id.</u> at 678. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009)(quoting <u>Iqbal</u>, 556 U.S. at 678)(internal quotation marks omitted).   "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations and footnote omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").   This is a "context-specific task that

6

requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

II.

Mrs. Singletary concedes that the Plan is subject to ERISA; indeed, she alleges that her husband was covered under the Plan as a qualified dependent. She likewise concedes that the group life insurance policy excludes coverage for dependent life insurance benefits based solely on an individual's status as a member of the

armed forces without regard to any connection between the insured's death and war (or other military activities or duties).  But she insists that it does so unfairly, and illegally.  Thus, the defendants in their four pending motions to dismiss focus not on Mrs. Singletary's ERISA claim; rather, they focus on whether or not Mrs. Singletary has stated any one of three claims that the group policy exclusion is prohibited by the Louisiana Insurance Code, or is illegal discrimination against members of the armed forces under the Uniformed Services Employment and Reemployment Rights Act of 1994 or the Louisiana Military Service Relief Act.

*A.*

As an initial matter, insofar as the plaintiff seeks to recover from UPS on her ERISA claim, the plaintiff has failed to state a claim.  The plaintiff does not allege that UPS is more than merely a plan sponsor, that UPS controls administration of the Plan, or that UPS has the authority to fund or decide claims with respect to the life insurance benefits at issue.  Accordingly, it appears that UPS is not a proper defendant to Mrs. Singletary's ERISA claim.  See LifeCare Management Services, LLC v. Insurance Management Administrators Inc., 703 F.3d 835, 843 (5th Cir. 2013).  see also Musmeci v. Schwegmann Giant Super Markets, Inc., 332 F.3d 339, 349-50 (5th Cir. 2003).  By failing to advance any argument in opposition, the plaintiff apparently concedes this point.  Accordingly, UPS's motion to dismiss Count 1 (as against UPS) must

be granted.[8]

*B.*

UPS's motion to dismiss Count II of the plaintiff's complaint presents the issue of whether the Plan's armed forces coverage exclusion is prohibited under the anti-discrimination provisions of the Uniformed Services Employment and Reemployment Rights Act of 1994.[9]

In Count II, Mrs. Singletary alleges that UPS has violated the Uniformed Services Employment and Reemployment Rights Act of 1994 by denying her equal access and coverage for life insurance benefits under the terms of the Plan solely because of her husband's active duty status in the armed forces at the time of his death.  UPS contends that dismissal of Count II is warranted as a matter of law where, as here, Mrs. Singletary, who herself has never applied to or served in the military, seeks to recover from UPS a benefit of her employment that she has been denied due to her late husband's uniformed service.

The Uniformed Services Employment and Reemployment Rights Act of 1994 was "enacted to prohibit discrimination by employers against persons because of *their* service in the uniformed services."  38 U.S.C. § 4301(a)(3)(emphasis added).  To advance this and similar purposes, this anti-discrimination law is self-

---

[8] Count 1, as to Prudential, is not reached.

[9] UPS is the only defendant named in Count II.

limiting and focused; § 4311(a) states:

> **Discrimination against persons who serve in the uniformed services and acts of reprisal prohibited**
>
> (a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

The statute's text is clear and direct.  This Act applies, for example, to preclude discrimination against a service member by that service member's employer.  Nowhere in the plain text of the statute does the USERRA prohibit discrimination against a spouse of a service member by the spouse's employer.  <u>See</u> <u>Lourens v. Merit Systems Protection Board</u>, 193 F.3d 1369, 1371 (Fed. Cir. 1999)("If Congress desired [§ 4311(a)] to include spouses or widows [of those in uniformed service], an additional phrase in the statute would have done the job. That phrase is not there.").

Notwithstanding the Act's express application only to a person who is a "member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service," Mrs. Singletary nevertheless seeks the shelter of its anti-discrimination provision by virtue of her deceased husband's military status.  Ignoring subsection (a), she invokes subsection (b) of § 4311, which states:

> (b) An employer may not discriminate against or take any adverse employment action against any person because such

> person (1) has taken action to enforce a protection
> afforded to any person under this chapter[] or (4) has
> exercised a right provided for in this chapter.   The
> prohibition in this subsection shall apply with respect
> to a person regardless of whether that person has
> performed service in the uniformed services.

Mrs. Singletary claims that, by denying her claim for dependent life insurance benefits solely because of Mr. Singletary's status as a member of the armed forces, *she* has been denied by UPS a benefit of *her* employment.   UPS counters that Mrs. Singletary's argument is defeated by the express application of the Act, and further points out that she fails to offer up even one case that would support a spouse or widow's enforcement rights under the Act. The Court agrees that her USERRA claim is not plausible.

Mrs. Singletary takes entirely out of its statutory schematic context the "any person" and "regardless of whether that person has performed service in the uniformed services" term and phrase of § 4311(b).   In fact, the anti-retaliation provision articulated in (b) appears to have no bearing on her attempt to state a claim under the USERRA.   "Section 4311," it has been observed, "prohibits employers from discriminating against employees on the basis of military service and retaliating against individuals, whether service members or not, who testify or give statements on behalf of a USERRA claimant."   See Coffman v. Chugach Support Services, Inc., 411 F.3d 1231, 1234 (11th Cir. 2005).   The Act's purpose pronouncement (§ 4301(a)) strictly delimits its scope.   Mrs. Singletary has advanced no allegations that would trigger

11

application of the USERRA here: she was neither a service member, nor an applicant to be a service member; nor is she alleging that she seeks to enforce a protection afforded to her deceased husband or any service member or applicant.  Insofar as she seeks to step into Mr. Singletary's shoes and enforce any rights that he may have had under the USERRA, she is not entitled to do so.[10]  See Lourens, 193 F.3d at 1371 ("We find no basis in USERRA for Mrs. Lourens's assertion that she assumes her deceased husband's rights and is thus covered by virtue of his service.").  Because the statute clearly limits anti-discrimination coverage to claimants who are service members or applicants, Mrs. Singletary's claim against UPS falls outside the USERRA's scope of protection.  See 38 U.S.C. §§ 4301(a), 4311(a); see also Erickson v. U.S. Postal Service, 636 F.3d 1353, 1355 (Fed. Cir. 2011)(The Act "prohibits public and private employers from discriminating against their employees on the basis of military service."); see also Petty v. Metropolitan Government of Nashville-Davidson County, 538 F.3d 431, 439 (6th Cir. 2008)("Courts have recognized that '[b]ecause USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries.");  see also Coffman v. Chugach Support Services, Inc., 411 F.3d 1231, 1234 (11th Cir. 2005)("Congress

_____

[10]Nor is that the theory of recovery she advances: she seeks to recover from her own employer, UPS, a benefit conferred upon her.

enacted USERRA to prohibit employment discrimination on the basis of military service as well as to provide prompt reemployment to those individuals who engage in non-career service in the military" and "Sections 4311 and 4312 provide separate and distinct statutory protections for service members."); see also Lourens v. Merit Systems Protection Board, 193 F.3d 1369 (Fed. Cir. 1999); see also Harden-Williams v. Agency for Int'l Dev., 469 Fed. Appx. 897, 899 n.2 (Fed. Cir. 2012)("In any event, this court has already held that a widow of a military serviceman who has not herself served in a uniformed service is not entitled to the protections of USERRA."); see also 70 Fed.Reg. 75313 ("To the extent that the comment seeks an affirmative statement that spouses and dependents are protected from discrimination by their own employers because they are related to an individual covered by the USERRA, such a request exceeds the coverage of the statute.").  Mrs. Singletary has failed to state a plausible USERRA claim as a matter of law.

*C.*

Next, the defendants seek to dismiss Count III of the plaintiff's complaint, the plaintiff's Louisiana Military Service Relief Act claim.  In support of dismissal, the defendants contend that the LMSRA is preempted by ERISA, and even if it is not preempted, the active-military exclusion in the Plan is not prohibited by the LMSRA.  Prudential additionally contends that because the LMSRA applies only to employers, the plaintiff fails to

state an LMSRA claim as to it for the additional reason that Prudential was not Mrs. Singletary's employer, UPS was.

The Louisiana Military Service Relief Act, La.R.S. 29:401, *et seq.*, like the USERRA, prohibits discrimination by an employer against a member of or an applicant to uniformed service; it provides, in part:

> A. A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.
> ...
> C. An employer may not discriminate in employment against or take any adverse employment action against any person because such person has taken an action to endorse a protection afforded any person under this Part, ... or has exercised a right provided for in this Part.

La.R.S. 29:404.   Its anti-discrimination provision extends to an in-state employer's provision of group life insurance, as one of many benefits identified in the LMSRA:

> A. The provisions of this Section shall be applicable to any group life insurance, group insurance, family group, blanket and franchise health and accident insurance, and health care services plan provided by any private or public employer in this state.
> B. Any employee shall have the right to maintain the insurance or plan coverage enumerated in Subsection A.... Upon timely receipt of the employee's contributions required by the insurance policy or plan provisions, the employer shall provide the applicable insurer or health maintenance organization with those contributions plus an amount equal to what the employer would have contributed during the period of service in the uniformed services. The employee shall notify his employer of his election to continue insurance or plan coverage at the time he enters

service in the uniformed services.
C. Family members or dependent children of an employee
who are covered by any insurance policy or plan
enumerated in Subsection A herein who are subsequently
called to service in the uniformed services shall
continue to be considered family members or dependents
under the provisions of the policy or plan without any
lapse of coverage, provided that all required
contributions are paid in accordance with the policy or
plan provisions.
E. The provisions of this Section shall not be construed
to invalidate the provision of any life insurance policy
excluding or restricting coverage in the event of death
as provided for in R.S. 22:170(b)(1) and (2).
F. The provisions of this Section shall not invalidate
any legitimate exclusions to coverage of any policy or
plan enumerated in Subsection A herein.

La.R.S. 29:407.  See La.R.S. 29:405-420 for additional benefits

such as compensation, leave status, worker's compensation, right to

reinstatement, and retirement credit.

The plaintiff's LMSRA claim fails as a matter of law for

several reasons.  First, the LMSRA is preempted by ERISA.  Second,

even if it is not preempted (or was somehow saved from ERISA

preemption), the LMSRA permits policy exclusions such as the one

challenged here based on military status.  Third, as to Prudential,

the plaintiff cannot state a claim under the LMSRA, which (like its

federal counterpart, the USERRA) applies to employers, not

insurers.[11]   The plaintiff alleges that the Plan is an employee

welfare benefit plan governed by ERISA, and indeed it is.  See 29

---

[11]Insofar as the LMSRA is directed to employers, the Court
agrees that Prudential is not a proper defendant for any LMSRA
claim.  The plaintiff advances no credible argument in opposition.

U.S.C. § 1002.[12]  ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).[13]  ERISA's expansive preemptive scope is only limited by the "savings clause," in which ERISA does not preempt any state law that "regulates insurance." 29 U.S.C. § 1144(b)(2)(A).  Under the conflict preemption test endorsed by the Supreme Court, a state law is deemed a law which regulates insurance, and thereby exempt from preemption, if the law (1) is directed toward entities engaged in insurance; and (2)

---

[12] ERISA defines an "employee welfare benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002.

[13]The Supreme Court has broadly interpreted this federal preemption provision. See Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 739, 85 L. Ed. 2d 728, 105 S. Ct. 2380 (1985).  ERISA's preemptive scope is purposefully broad, so as to establish the regulation of federal pension plans as an exclusively federal concern. See Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1217 (5th Cir. 1992)("Preempted state law includes any state law cause of action as it relates to an employee benefit plan, even if it arises under a general law which in and of itself has no connection to employee benefit plans.").  When the underlying conduct at issue is connected to an employee benefit plan, "state law claims are preempted in their entirety."  Id. at 1220.

substantially affects the risk pooling arrangement between the insurer and the insured.  <u>Kentucky Ass'n of Health Plans, Inc. v. Miller</u>, 538 U.S. 329, 341-42 (2003).

The Court finds that the LMSRA fails the first part of the <u>Miller</u> test.   The LMSRA is not directed toward the insurance industry;[14] it is directed at employers generally to advance its anti-discrimination purpose by mandating that employers provide a variety of benefits to uniformed service members.   The LMSRA is therefore not saved from ERISA preemption.   See <u>Aucoin v. RsW Holdings, L.L.C.</u>, 476 F. Supp. 2d 608, 614-15 (M.D. La. 2007) (finding that provision of Louisiana Insurance Code does not regulate insurance "but rather imposes an obligation on employers parallel to the requirements of COBRA under ERISA"); <u>see</u> <u>also</u> <u>Perry v. FTData</u>, 198 F. Supp. 2d 699 (D. Md. 2002)(finding that Maryland insurance law did not regulate insurance "but rather regulates an employee benefit plan by providing the same obligation to employers that COBRA does").

Even if the plaintiff had persuaded the Court that her LMSRA claim was saved from ERISA preemption, she nevertheless has failed to state a claim for which relief may be granted.   This is so because -- even if the LMSRA applies to the Plan -- exclusions

---

[14]<u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 50 (1987)("in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry.").

based on military status for group life insurance, such as the one in her Plan, are permitted by the LMSRA and the Louisiana Insurance Code. The LMSRA states that "[t]he provisions of this Section shall not invalidate any legitimate exclusions to coverage of any policy or plan enumerated in Subsection A herein [i.e., group life insurance]." La.R.S. 29:407(F). The LMSRA does not define "legitimate exclusions", but the Louisiana Insurance Code articulates valid exclusions. In particular, La.R.S. 22:943, which governs group life insurance (set forth more completely below) provides that a policy of group life insurance may exclude or restrict coverage "in the event of death occurring: . . . (2) While in the military, naval, or air forces of any country at war, declared or undeclared." La.R.S. 22:943(A). As explained more thoroughly in connection with the defendants' final motion to dismiss Count IV (the plaintiff's claim under La.R.S. 22:943), Louisiana insurance law expressly permits a group life insurance plan such as the one at issue here to exclude coverage in the event that death occurs while the individual is in the military. Notably, questions of fairness aside, the Louisiana state law permits such exclusions regardless of any connection or causation between the insured's death and war. Here, as discussed in connection with Count IV below, Mr. Singletary died while an active member of the armed forces in 2012, when the United States was involved in an undeclared war with Afghanistan. Accordingly, Mrs.

18

Singletary's LMSRA claim fails as a matter of law for the additional reason that the LMSRA would not and does not apply here to invalidate the Plan's exclusion; rather, the LMSRA permits such "legitimate exclusions" as contained in the general insurance code.

*D.*

Finally, the defendants seek dismissal of Count IV, a claim added by the plaintiff in her amended complaint in which she alleges that the terms of the Plan violate the Louisiana Insurance Code.  The defendants challenge the plausibility of this latest claim on the grounds that (1) the Insurance Code does not apply; and (2) even if it does, the Code in fact permits the challenged policy exclusion contained in the Plan.  The Court agrees on both counts.

Louisiana Revised Statute 22:943 states:

A. No policy of group life insurance **delivered or issued for delivery in this state** shall contain any provision which excludes or restricts liability for death caused in a certain specified manner or occurring while the insured has a specified status, **except** the following provisions, excluding or restricting coverage in the event of death occurring:
(1) As a result of war, declared or undeclared, under conditions specified in the policy;
(2) **While in the military, naval, or air forces of any country at war, declared or undeclared**; or in any ambulance, medical, hospital, or civilian noncombatant unit serving with such forces, either while serving or within six months after termination of service in such forces or units.
B.   The commissioner may also allow provisions which, in the opinion of the commissioner, are substantially the same....

La.R.S. 22:943(A).

19

First, the defendants submit that the plaintiff has not and cannot plead that the policy here is a policy of group life insurance "delivered or issued for delivery in" the state of Louisiana and, thus, the Louisiana Insurance Code is not triggered. The Court agrees.

Whether an insurance policy has been delivered in the state of Louisiana depends on the intention of the parties as manifested by their actions or words. See McDermott Intern., Inc. v. Lloyds Underwriters of London, 120 F.3d 583, 586 (5th Cir. 1997); Ostrowiecki v. Aggressor Fleet, Ltd., No. 07-6598, 2008 WL 2185326, at *4 (E.D. La. May 20, 2008)(citations omitted).  No alleged facts indicate that the group policy at issue here was delivered or issued for delivery in Louisiana.  Although the allegations of the plaintiff's complaint fail to advance resolution of this threshold issue, the Court need only look to the applicable group policy incorporated by reference into the complaint; the group policy manifests the intention of the contracting parties that the contract is delivered in Georgia.  Indeed, the plaintiff alleges (correctly) that UPS is a Georgia-based company, and the insurance contract states that the group contract "is delivered in and governed by the laws of . . . Georgia."  Taking the alleged facts together with the policy language, the policy was delivered or issued for delivery in Georgia; thus, La.R.S. 22:943 is not

triggered.[15] The plaintiff has failed to state a plausible claim under La.R.S. 22:943.  Count IV must be dismissed on this ground alone.

Even if the Louisiana Insurance Code were triggered, however, the Court is persuaded that La.R.S. 22:943(A) would not and does not provide a plausible basis for the plaintiff's claim in Count IV.  This is so because La.R.S. 22:943(A) expressly allows exclusions based on military status for group life insurance. Again, this result is compelled by the statutory text.

Louisiana Revised Statute 22:943 states:

A. No policy of group life insurance delivered or issued for delivery in this state shall contain any provision which excludes or restricts liability for death caused in a certain specified manner or occurring while the insured has a specified status, **except the following provisions**, excluding or restricting coverage in the event of death occurring:
(1) As a result of war, declared or undeclared, under conditions specified in the policy;
(2) **While in the military, naval, or air forces of any country at war, declared or undeclared....**

B.  The commissioner may also allow provisions which, in the opinion of the commissioner, are substantially the same....

La.R.S. 22:943(A)(emphasis added).

The statute patently permits a group life insurance policy to exclude coverage when the death occurs while the individual is in

---

[15]That a copy of the Certificate of Coverage was sent (or required to be sent) to the plaintiff does not alter the state of delivery for the government group insurance contract; which on the face of the contract was delivered to UPS in Georgia.

the military of a nation at war; there is no statutory requirement that the insured's death be connected to the war.  The defendants submit, and the Court takes judicial notice of the fact, that in October 2012 when Mr. Singletary died, the United States was at war in Afghanistan.[16]  By application of Louisiana law, too, then, a policy of group life insurance delivered in Louisiana may except from coverage death occurring while the individual in the military of any country at war, even undeclared war.  For this additional reason, because Mr. Singletary died while serving in the military of a nation at war, if Louisiana applies, it permits the coverage exclusion contained in the group contract that Mrs. Singletary now challenges.[17]  For this additional reason, the plaintiff has failed to state a plausible claim against the defendants under the

---

[16]The Court takes judicial notice of the then-ongoing war in Afghanistan in 2012.  The defendants submit support for their assertion that the war was still ongoing two years after Mr. Singletary's death.  Statement by the President on the End of the Combat Mission in Afghanistan, Office of Press Secretary, Dec. 28, 2014 (stating that after 13 years of war, the United States is ending its combat mission in Afghanistan and the longest war in American history).

[17]The plaintiff alleges and persists in arguing that it is unfair to exclude from coverage the death of her husband, who was stationed stateside and was killed in a weekend motorcycle accident that had no causal connection between his death and a faraway war (that the plaintiff disputes was even a "war").  This is a matter for the state legislature.  Notably, La.R.S. 22:943(A)(1) includes a separate and distinct exception for deaths as a result of war, which allows for group life insurance coverage exclusions for military service members who die "[a]s a result of war declared or undeclared under conditions specified in the policy."

Louisiana Insurance Code.

Accordingly, the four motions to dismiss are GRANTED.  The Court notes that the plaintiff has still pending and viable an ERISA claim as alleged in Count 1 of her complaint.

New Orleans, Louisiana, April 30, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

23