```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA

LINDA SINGLETARY                                    CIVIL ACTION

v.                                                  NO. 14-2648

THE PRUDENTIAL INSURANCE COMPANY                    SECTION "F"
OF AMERICA, ET AL.
```

ORDER AND REASONS

Before the Court are three motions: (1) The Prudential Insurance Company of America's motion for summary judgment; (2) The United Parcel Service Flexible Benefits Plan and United Parcel Service, Inc.'s motion for summary judgment; and (3) the plaintiff's cross-motion for summary judgment. For the reasons that follow, the defendants' motions are GRANTED and the plaintiff's motion is DENIED.

**Background**

This lawsuit arises out of a widow's efforts to recover life insurance benefits under the Employee Retirement Income Security Act of 1974, following her husband's tragic death at age 37 in a weekend motorcycle accident; benefits that were denied because of her late husband's active military status.

Linda Singletary worked for United Parcel Service, Inc. as a part-time, non-union employee. As a UPS employee, Mrs. Singletary participated in the UPS Service Flexible Benefits Plan, which provides group insurance coverage to certain qualified UPS

1

employees and their dependents. Mrs. Singletary was enrolled in basic and optional dependent term life insurance. The Plan, which includes benefits for both basic dependent life insurance benefits and optional, supplemental dependent life benefits,[1] is an employee welfare benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*. The Plan provides:

> **FOR DEPENDENTS INSURANCE**
>
> **You are eligible to become insured for Dependents Insurance while:**
>
> - You are eligible for Employee Insurance; and
> - You have a Qualified Dependent.
>
> **Qualified Dependents:**
>
> **These are the persons for whom you may obtain Dependents Insurance:**
>
> - Your spouse or Domestic Partner.
>
> *********
> **Exceptions:**
>
> For Dependents Term Life Coverage:
>
> (1) Your spouse or Domestic Partner is not your Qualified Dependent while on active duty in the armed forces of any country; or
>
> ********
>
> **When You Become Insured**
>
> **FOR DEPENDENTS INSURANCE**

---

[1] Under the Plan, as a dependent of Linda Singletary, Timothy Singletary was allegedly covered in the amount of $2,000 for basic dependent life benefits and $500,000 for optional dependent life benefits.

> Your Dependents Insurance under a Coverage for a person will begin the first day on which all of these conditions are met:
>
> • The person is your Qualified Dependent.
>
> ********
>
> • You have met any evidence requirement of that Qualified Dependent.

UPS is the Plan sponsor. The Prudential Insurance Company of America is the insurance carrier for Life Insurance and AD&D benefits under the Plan. The Certificate of Coverage describing the Plan's dependent term life insurance benefits provides that Prudential decides if a participant receives benefits under the Plan.[2] Prudential is also the claims administrator with respect to the life insurance benefit at issue.[3] As claims administrator, Prudential has the discretion to decide claims and appeals. The Plan's Summary Plan Description states:

> Certain benefits offered under the Plan are provided through an insurance contract issued to UPS ("the Company") by an insurance carrier. In this case, the insurance carrier is the applicable claims fiduciary with respect to claims for benefits provided under the insurance contract. This means that the insurance carrier – not the UPS Claims Review Committee ("the Committee") – has the discretionary authority to

---

[2] The Certificate of Coverage states: "You must give evidence of insurability for a Qualified Dependent spouse. . . . This requirement will be met when Prudential decides the evidence is satisfactory."

[3] In connection with the Plan, Prudential issued to UPS a group life insurance policy, Group Policy Number G-76536-GA, which insured, among other things, dependent life insurance benefits.

determine benefits that are insured by the insurance carrier.

Mrs. Singletary's husband, Timothy, died on October 21, 2012 as a result of injuries sustained in a motor vehicle collision.[4] Mr. Singletary was a member of the United States Army, but he was stationed stateside and was off-duty at the time of his death. After her husband's death, Mrs. Singletary submitted a claim to Prudential for life insurance benefits under the Plan. UPS, on behalf of Mrs. Singletary, filed an "Application for Group Life Claim" for basic and optional dependent term life insurance benefits on November 9, 2012. Mrs. Singletary submitted her beneficiary statement on November 26, 2012.

In investigating Mrs. Singletary's claim for dependent life insurance benefits, Prudential reviewed the Department of the Army's "Report of Casualty." That report indicated that Mr. Singletary was on active duty, although "Off duty", at the time of his death. On December 4, 2012, Prudential's Sherea Williams spoke with Gerald Hensen with the Army's Human Resources Department to clarify the report. Mr. Hensen confirmed that Singletary was on active duty in the United States Army at the time of his death.

---

[4] On October 21, 2012, Mr. Singletary was a member of the United States Army, stationed stateside. He was operating a 2003 Honda motorcycle on State Highway 195 in Killeen, Texas when he was involved in a collision with another vehicle. After Mr. Singletary was thrown from his motorcycle and came to rest in a traffic lane, another vehicle drove over him and he became lodged underneath the vehicle until it stopped. Mr. Singletary was transported to a nearby hospital, where he was pronounced dead.

Mr. Hensen explained that the "off duty" notation on the Report of Casualty was merely an internal code for the Army's administration area regarding Mr. Singletary's location at the time of his death. The same day that Ms. Williams confirmed with Mr. Hensen that Singletary was on active duty at the time of his death, on December 4, 2012, Prudential denied Mrs. Singletary's claim; Prudential informed Mrs. Singletary that, under the Plan terms, Mr. Singletary was not eligible for coverage at the time of his death because he was on active duty in the Armed Forces.[5] Mrs. Singletary twice appealed Prudential's adverse benefits determination on the grounds that (a) Mr. Singletary was a qualified dependent at the time of his death because he was off duty; and (b) it is illegal discrimination to deny benefits to a serviceman. Prudential twice denied Mrs. Singletary's appeals.[6]

Having exhausted her administrative remedies under the terms

---

[5] The group policy exclusion provides, in part:

> Your spouse or Domestic partner is not your Qualified Dependent while on active duty in the armed forces of any country[.]

[6] Prudential denied the February 6, 2013 appeal on May 6, 2013, noting that Singletary did not meet the definition of a qualified dependent because he was on active duty in the Army on the day he died. Prudential denied the October 29, 2013 appeal, reiterating its prior finding; Prudential acknowledged that Mr. Singletary was not killed in combat, but reiterated that he did not meet the definition of qualified dependent because he was on active duty in the Army, making him ineligible under the definition of a qualified dependent under the Plan.

of the Plan and ERISA, on November 19, 2014, Mrs. Singletary sued The Prudential Insurance Company of America, the United Parcel Service Flexible Benefits Plan, and United Parcel Service, Inc. Mrs. Singletary seeks to recover damages related to the denial of basic and optional dependent life insurance benefits under the benefit plan sponsored by her employer, UPS.[7] She originally advanced four theories of recovery in her complaint. First, Mrs. Singletary seeks to recover from Prudential dependent group life insurance benefits; a claim governed by ERISA (Count I). Second, Mrs. Singletary alleges that UPS (only) has violated the Uniformed Services Employment and Reemployment Rights Act of 1994 by denying her equal access and coverage for life insurance benefits under the terms of the Plan solely because her husband was on active duty status in the armed forces at the time of his death (Count II). Third, Mrs. Singletary seeks to recover, under the Louisiana Military Service Relief Act, La.R.S. 29:402, an award of all basic and optional dependent life insurance benefits under the Plan, plus an amount equal to that award as liquidated damages and attorney's fees. Fourth, Mrs. Singletary seeks a declaration under La.R.S. 22:943(A) that the Plan's referenced exclusion (based solely on an otherwise qualified dependent's status as a member of the armed forces) is illegal.

---

[7] Mrs. Singletary alleges that each of the three named defendants are liable jointly, severally, and *in solido*.

Prudential previously moved to dismiss Counts III and IV of the plaintiff's original and amended complaints.  And the Plan, along with UPS, also moved to dismiss Counts II, III, and IV of the original and amended complaints; finally, UPS also moved to dismiss Count I insofar as it was named as a defendant to the plaintiff's ERISA claim.  On April 30, 2015 the Court granted the motions, disposing of the plaintiff's claims under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301, the Louisiana Military Service Relief Act, La.R.S. § 29:401, and the Louisiana Insurance Code, La.R.S. § 22:943.  The plaintiff's only remaining claim is her claim based on ERISA.  Contending that Prudential's decision to deny the plaintiff's claim for benefits was both correct and reasonable and that the plaintiff did not incur a covered loss under the terms of the United Parcel Service Flexible Benefits Plan, the defendants each seek summary judgment in their favor; urging that the adverse benefits determination was unreasonable, the plaintiff seeks summary relief by cross-motion.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co.

v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal

8

quotation marks and citation omitted). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

II.

*A.*

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008) (citing 29 U.S.C. § 1001; § 1132(a)(1)(B)). When reviewing a denial of benefits made by an ERISA plan administrator, the Court applies a *de novo* standard of review, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the benefit plan confers on the claims administrator the discretionary authority to determine eligibility for benefits, then the Court applies the deferential, abuse of discretion standard of review. Holland v. Int'l Paper Co. Retirement Plan, 576 F.3d 240,

246 (5th Cir. 2009)("because the Plan indisputably gives the Plan Administrator the discretionary authority to construe the Plan's terms and to render benefit decisions, we reverse the Plan Administrator's denial of benefits to [the plaintiff] only if it abused its discretion."). Here, the Plan confers on Prudential, the Plan Administrator, the discretionary authority to render benefit decisions.[8] Accordingly, this Court must apply an abuse of discretion standard to review Prudential's decision to deny Mrs. Singletary.

An ERISA claimant bears the burden to show that the administrator abused its discretion. George v. Reliance Standard Life Ins. Co., 776 F.3d 349, 352-53 (5th Cir. 2015)(citation omitted); Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 273 (5th Cir. 2005)("the law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny . . . benefits, not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's

---

[8] As claims administrator, Prudential has the discretion to decide claims and appeals. The Plan's Summary Plan Description states:
> Certain benefits offered under the Plan are provided through an insurance contract issued to UPS ("the Company") by an insurance carrier. In this case, the insurance carrier is the applicable claims fiduciary with respect to claims for benefits provided under the insurance contract. This means that the insurance carrier – not the UPS Claims Review Committee ("the Committee") – has the discretionary authority to determine benefits that are insured by the insurance carrier.

claim of disability."). In reviewing a plan fiduciary's interpretation of its plan, the Fifth Circuit has endorsed, but does not always call for, the application of a two-step process[9]: first, the Court determines the legally correct interpretation of the plan. Id. at 269-70. Second, if the administrator did not give the plan the legally correct interpretation, the Court then determines whether the administrator's decision was an abuse of discretion. Id. at 270; Holland, 576 F.3d at 246 n.2 ("If the determination was legally correct [step one], there is no abuse of discretion; if it was incorrect, then we must review whether that interpretation was an abuse of discretion.").

Under the abuse of discretion standard, the Court must determine whether the administrator's decision was "arbitrary and capricious." Anderson v. Cytec Indus., Inc., 619 F.3d 505, 512 (5th Cir. 2010)("This is the functional equivalent of arbitrary and capricious review: '[t]here is only a semantic, not a substantive, difference between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context.'")

---

[9] The Fifth Circuit has "bypass[ed], without deciding, whether the Plan Administrator's denial was legally correct" when the parties fail to "conform[] their arguments to our traditional two-step analysis." See Holland, 576 F.3d at 246 n.2 (noting that "we are not confined to this test; we may skip the first step if we can more readily determine that the decision was not an abuse of discretion.")(citations omitted); see also Sanchez v. Life Ins. Co. of North America, 393 Fed.Appx. 229, 232 (5th Cir. 2010)(proceeding immediately to the second prong when presented with a case where "we can more readily determine that the decision was not abuse of discretion[.]")(internal quotations and citation omitted).

(citation omitted). "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." Holland, 576 F.3d at 246 (internal quotation marks omitted). Put another way, a decision is arbitrary only if made "without a rational connection between the known facts and the decision or between the found facts and the evidence." Bellaire Gen. Hosp. v. Blue Cross Blue Shield, 97 F.3d 882, 828 (5th Cir. 1996); Truitt v. Unum Life Ins. Co. of Am., 729 F.3d 497, 508 (5th Cir. 2013)(citation omitted).

The administrator's decision must be supported by substantial evidence. See Ellis, 394 F.3d at 274. The Fifth Circuit instructs that "[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." Corry v. Liberty Life Assurance Co. of Boston, 499 F.3d 389, 397-98 (5th Cir. 2007)(quoting Ellis, 394 F.3d at 273)). "Substantial evidence is more than a mere scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 398. Ultimately, the Court's review of the administrator's decision "need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness–even if on the low end." Id. (quoting Vega v. Nat'l Life Ins. Serv., Inc., 188 F.3d 287, 297 (5th Cir. 1999)(*en banc*)).

If the plan administrator has a conflict of interest (such as

where the ERISA plan administrator is also a payer of benefits), the Court "weigh[s] the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial." See Holland, 576 F.3d at 247, 248 n.3 ("meaning [the Court must] take account of several different considerations of which conflict of interest is one"; eschewing sliding scale approach that altered applicable standard of review in favor of factor-based methodology)(citing, among others, Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 112-13 (2008)).[10] However, if there is no evidence (other than the administrator's dual role and, thus, structural conflict of interest) that the administrator's conflict affected its benefits decision or that it has a history of abuses of discretion, the relative significance of the conflict is diminished. See Glenn, 554 U.S. at 115-119.[11]

---

[10] Notably, "a systemic conflict of interest does not strip a plan administrator of deference." Conkright v. Frommert, 559 U.S. 506, 513 (2010).

[11] The Supreme Court offers this guidance:

> The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing

*B.*

At issue in the cross-motions for summary judgment is whether or not Prudential's decision to deny the plaintiff's claim for basic and optional dependent life insurance benefits was reasonable. Seeking judgment as a matter of law, the plaintiff challenges Prudential's adverse benefits determination based on the "active duty" exclusion; she submits the decision was unreasonable because her husband was off-duty and located off-base at the time of his death.[12] The defendants counter that judgment as a matter of law in their favor is warranted because the administrative record leaves no question that Prudential's reasonable investigation demonstrated that Mr. Singletary was on "active duty" in the armed forces of the United States at the time of his death, which triggered the policy exclusion, and fully supports the denial

---

> management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

Id. at 117.

[12] The plaintiff does not meaningfully dispute whether or not her husband was on active duty at the time of his death. On the one hand, the plaintiff admits in her briefing that her husband was a member of the United States Army at the time of his death and that "[t]he group life insurance policy excludes coverage for dependent life insurance benefits based solely on an individual's status as an 'active duty' member of the armed forces without regard to any connection between the insured's death and war[.]" On the other hand, the plaintiff argues that her husband being stationed stateside coupled with the fact that he was not on duty (but, rather, riding his motorcycle on a weekend off of the base) *should* not trigger the "active duty" exclusion.

of benefits.  The Court agrees.

As a threshold matter, the Court finds that the abuse of discretion standard of review applies given that the Plan grants Prudential the discretion "to determine benefits that are insured by the insurance carrier."[13]  The plaintiff presses for application of *de novo* review, but she fails to acknowledge that the Summary Plan Description, which is incorporated into the Plan by reference, specifically grants discretion to Prudential "to determine benefits."[14]

Applying the abuse of discretion standard, the Court looks to whether "the administrator's decision falls somewhere on a continuum of reasonableness – even if on the low end."  Corry, 499 F.3d at 398; Gothard v. Met. Life Ins. Co., 491 F.3d 246, 249-50 (5 Cir. 2007)("[The administrator's] decision may not be correct, but we cannot say that it was arbitrary.").  The Court finds that Prudential's decision to deny the plaintiff's claim for basic and

---

[13] Additionally, the Certificate of Coverage describing the Plan's life insurance benefits makes clear that Prudential decides if a participant receives benefits under the Plan: "You must give evidence of insurability for a Qualified Dependent spouse. . . .  This requirement will be met when Prudential decides the evidence is satisfactory."

[14] Insofar as the plaintiff is suggesting that nowhere in the policy is Prudential granted authority, explicitly, to "construe the terms of the group policy," that appears to be conceded by Prudential.  Nevertheless, Prudential submits that necessarily included in its grant of sole discretion to "determine benefits that are insured" is the task of construing policy terms to make such determinations.  Absent some contrary authority -- none is offered up by the plaintiff -- the Court agrees.

optional dependent life insurance benefits under the Plan was reasonable -- there is a rational connection between the known facts (Mr. Singletary's status as an active duty member of the U.S. Army) and the decision (determination that Mr. Singletary was not a qualified beneficiary and, thus, denial of Mrs. Singletary's claim for life insurance benefits).

According to the administrative record, Prudential reviewed the plaintiff's claim file and conducted an investigation, which revealed that Mr. Singletary was on active duty in the armed forces at the time of his death. In particular, a "Report of Casualty" from the Department of the Army indicated that Mr. Singletary was on "active duty." Because the report also indicated that Mr. Singletary was "off duty", Prudential contacted the Army's Human Resources Department and was told by Gerald Hensen that Mr. Singletary was on active duty at the time of his duty. Hensen explained that the "off duty" notation on the report was an internal code for the Army's administration regarding where Mr. Singletary was located at the time of his death.

Mr. Singletary's active duty status triggered this policy exclusion:

> FOR DEPENDENTS INSURANCE
> You are eligible to become insured for Dependents Insurance while:
>
> - You are eligible for Employee Insurance; and
> - You have a Qualified Dependent.
>
> Qualified Dependents:

16

>  These are the persons for whom you may obtain Dependents Insurance:
>
>  - Your spouse or Domestic Partner.
>
>  *********
>
>  **Exceptions:**
>
>  For Dependents Term Life Coverage:
>
>  (1) *Your spouse or Domestic Partner is not your Qualified Dependent while on **active duty** in the armed forces of any country*[.]

(emphasis added). Applying the plain words of the exclusion,[15] Prudential determined that Mr. Singletary was not a qualified dependent because he was on "active duty" as a member of the United States Army at the time of his death. This decision is supported by evidence in the administrative record and falls on a continuum of reasonableness. Prudential reasonably denied the plaintiff's claim for benefits.[16]

---

[15] That the Plan does not define "active duty" does not render the term ambiguous.

[16] That Prudential was responsible for both determining eligibility and paying benefits means that the Court must consider this structural conflict as a factor in determining whether Prudential abused its discretion in denying the plaintiff's claim. This fact, without more, however, does not undermine this Court's finding that Prudential did not abuse its discretion in making the benefits determination. See Sanchez, 393 Fed.Appx. at 232 ("This type of conflict . . . is a 'minimal' one.")(citing Corry, 499 F.3d at 398). Indeed, "the specific facts of the conflict will dictate its importance." Holland, 576 F.3d at 248. Notably, Mrs. Singletary has not adduced any evidence, and very little argument, regarding this or any other conflicts. (No party points the Court to any evidence, for example, of a history of biased claims administration or procedural unreasonableness on the part of Prudential.) Accordingly, absent evidence that suggests a likelihood that the structural conflict affected the benefits

Notably, Mrs. Singletary does not dispute that her husband was on "active duty" in the military at the time of his death; in fact, she admits that he was a member of the United States Army, stationed stateside. But she presses that the exclusion is unfair because it permits exclusion even where, as here, an active member of the armed forces is killed while he is off-duty, rather than killed while on-duty or performing duties incidental to his status as a member of the Army. The Court previously touched on the plaintiff's appeal to fairness when it addressed (and upheld) the defendants' challenges to the plausibility of her other claims.[17]

---

decision, this factor carries little weight in the abuse of discretion analysis in light of the evidence supporting Prudential's benefits determination.

[17] Insofar as the plaintiff, again, argues that the "active duty" group policy exclusion is unenforceable, the Court refers Mrs. Singletary to the April 30, 2015 Order and Reasons. The Court does not revisit the plaintiff's arguments invoking Louisiana law. Finally, the plaintiff's argument that she did not receive the certificate of coverage or group policy and, thus, did not have notice of the military exclusion, rendering the exclusion unenforceable, is unavailing. Review of the administrative record shows that the plaintiff admitted in her appeal to Prudential that she was provided with the Summary Plan Description, which included the Enrollment Kit. These materials put the plaintiff on notice that she should review the Certificate to understand all benefits limitations and advised her how to obtain a copy. Per the Summary Plan Description:

> The benefits are described in this booklet for your convenience; however, for complete details you should also read: . . . The Prudential Insurance Group Contract-Certificate, available by contacting Prudential at [telephone number]. If there is any conflict between the . . . Certificate and this description or the . . . Enrollment Kit,

There can be no dispute, however, that the Court is circumscribed in its review of her ERISA claim; it is not for the Court to remark on whether a policy exclusion is fair or unfair.  The Court is limited to resolving whether or not Prudential abused its discretion when it determined that Mr. Singletary was not Mrs. Singletary's qualified dependent on account of his active military status.  Because the administrative record supports Prudential's determination, summary relief in favor of the defendants and against the plaintiff is warranted.

Accordingly, the defendants' motions for summary judgment are GRANTED and the plaintiff's motion for summary judgment is DENIED.

New Orleans, Louisiana, August 5, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

the . . . Certificate provisions apply.

Similarly, the Enrollment Kit advised that it was merely "a summary" and "does not include all plan provisions, exclusions, and limitations."  Like the SPD, the Enrollment Kit advised that "[y]ou may request a Booklet-Certificate [with complete plan information including limitations and exclusions] by calling the UPS Benefits Service Center."  The plaintiff would have this Court fashion a requirement that Prudential or the Plan automatically deliver the Certificate or Group Policy to Mrs. Singletary, but she fails to support her position in law.